EICHHOLD et al. v. TIFFANY et al.

(Supreme Court, Appellate Division, First Department.　April 7, 1898.)

EVIDENCE—CONVERSATIONS—ABSENCE OF ADVERSE PARTY.

In an action upon a guaranty given in April, 1897, by defendants to plaintiffs, for goods to be purchased from the latter by "B. C. Young & Co.," there was evidence that at that time the firm was composed of B. C. Young only, and that subsequently, before the goods in question were bought, "B. C. Young & Co." ceased to exist, and a new firm of Young & Bruns was formed, to whom the goods were sold.　Evidence was admitted on behalf of plaintiffs of a conversation in the spring of 1887, between them and Mr. Young and Mr. Bruns, in the absence of defendants, in which it was stated that Young & Bruns were going into business as partners under the name of B. C. Young & Co., and that thereupon one of the defendants entered, and said the defendants would guaranty any goods that might be purchased. Thereafter the written guaranty was delivered.　*Held,* that the evidence as to the conversation with Young and Bruns was incompetent as against defendants, and, being prejudicial, its admission was reversible error.

Appeal from appellate term.

Action by Charles Eichhold and Edward A. Miller against Charles L. Tiffany and another on a contract of guaranty.　From a judgment of the appellate term (48 N. Y. Supp. 70) affirming the judgment of the general term of the city court (46 N. Y. Supp. 534), defendants appeal.　Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

C. E. Miller, for appellants.

S. Fleischman, for respondents.

VAN BRUNT, P. J.　This action was brought to recover on a guaranty given by the defendants to secure the plaintiffs to the amount of $1,000 for goods to be sold to Messrs. B. C. Young & Co.　This guaranty was given on the 15th of April, 1887, and guaranties payment for goods purchased by B. C. Young & Co., of St. Louis, Mo., to the extent of $1,000.　The plaintiffs offered evidence tending to show what conversation took place between themselves and B. C. Young and one Bruns at the time of the arrangement for the purchase of the goods, as to who composed the firm of B. C. Young & Co., which conversation was to the effect that Young and Bruns were going into the business of selling hats in St. Louis, under the firm name of B. C. Young & Co., and that they were both to participate in the profits of the business, and that both were to be partners.　This conversation was objected to, as not having taken place in the presence of the appellant, and that he was not bound thereby.　This objection was overruled, and the evidence admitted.　The plaintiffs further testified that the defendant Williams came in while the conversation was going on, and he said that himself and Tiffany would guaranty to the amount of $1,000 any goods which might be purchased.　The evidence further showed that subsequently a guaranty signed by Williams and Tiffany in the terms above mentioned was presented to the plaintiffs, and, further, that the plaintiffs sold goods, as they claimed, to the firm

of B. C. Young & Co., from the 20th of April down to the 30th of September, 1887. It is to be noticed upon an examination of the testimony of the plaintiffs that, whenever they talk about selling goods, they say they sold them to B. C. Young & Co.; yet they mark them to Young & Bruns. It also appears that although all transactions were entered on their books, and charged against Young & Bruns, and the goods sent to Young & Bruns, yet, when a claim is made under this guaranty, the sales are always to the firm of B. C. Young & Co., and the goods are sent to B. C. Young & Co. Mr. Young was also examined as a witness. He testified that he was from some time in April, 1887, to the middle of July, in the straw-hat business, in the city of St. Louis; and from September to October, 1887, they had a regular hat and gents' furnishing goods store; that in the straw-hat business he had no partner, but in the hat and gents' furnishing he had a partner, Otto A. Bruns; that in the hat business the name was B. C. Young & Co., and in the hat and gents' furnishing it was Young & Bruns; that there was a change of partners when he went into the regular hat and gents' furnishing business; that Bruns came in, and the name was changed to Young & Bruns. He further testified that there was a change in partners in the business at St. Louis between April 1 and October 15, 1887, and that, when they bought the goods in August for the new concern, they were marked "Young & Bruns," and billed that way, and there was no such firm as B. C. Young & Co. in St. Louis then; and that the plaintiffs knew this fact at the time they sold the goods.

It is clear from this condition of the proof that the evidence given upon the part of the plaintiffs of the conversation had between them and Young and Bruns in the spring of 1887, if not competent, was extremely detrimental to the appellants. The admission of this testimony has been sustained upon the ground that it was part of the res gestæ. It certainly was a part of the transaction of the buying of the goods, but it was not a part of the transaction of the signing of the guaranty, and these were separate and distinct transactions. The defendant appellant was not present at the time of this conversation between Young and Bruns and the plaintiffs. He knew nothing of what had transpired. There is no evidence as to what took place at the time the appellants signed the guaranty, or what statements were made to him at that time, and his obligation is to be measured solely by the writing which he has signed. He cannot be held for representations which were made when he was absent. There is no evidence that he authorized any such representations, or that he knew anything about them. All that he did was to guaranty the firm of B. C. Young & Co., and it was necessary for the plaintiffs to offer proof as to who composed the firm of B. C. Young & Co. by evidence other than the declarations of somebody made in the absence of the defendant appellant. The only competent evidence upon that point shows that the firm of B. C. Young & Co. was composed of B. C. Young, and that all this conversation by Bruns and Young with the plaintiffs as to partnership related to some-

thing which was expected to take place in the future, and which did occur some months after the giving of the guaranty. The appellant guarantied the firm of B. C. Young & Co., which was then in business, and none other. The claim which the plaintiffs have is against the firm of Young & Bruns, as they themselves testified, although they have endeavored to make it out that it is the firm of B. C. Young & Co. It would appear, as has already been stated, that, when the goods are sold, they are charged in their books to Young & Bruns; but, when it is desired to hold the defendant upon his guaranty, it is to B. C. Young & Co. that the credit was given,— another and distinct firm.

We think that the court erred in admitting the testimony as to the declarations made by Young and Bruns in respect to their partnership relations in anticipation of the purchase of goods, and that the appellant can only be held upon his guaranty in accordance with its terms. There was error, therefore, committed prejudicial to the defendant, and the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.